## R. H. MOORE v. THE STATE.

### No. 3444.   Decided March 14, 1906.

**1.—Manslaughter—Change of Venue—Dismissal—Jurisdiction.**

Where the homicide occurred in L county and on change of venue the case was transferred to F county, where a conviction was had, and upon appeal the case was reversed because of error in changing the venue to F county, and because the original application of appellant was to change the venue to R or D county; and upon return of mandate of said reversal the court ordered the case back to L county.   Held, that there was no dismissal of the prosecution on account of certain expressions in the order of transfer and the jurisdiction was properly in L county; article 474, Code Criminal Procedure, had no application to such transfer.

**2.—Same—Bill of Exceptions.** '

Where the homicide occurred in L county and the defendant applied for change of venue to D county and the court over his objection changed the venue to F county, where defendant was convicted and upon appeal the case was reversed because of such erroneous change of venue to F county, and thereupon the case was retransferred to L county, and the court upon the defendant's original application changed the venue to D county, where the defendant for the first time objected to change to D county; held that there being no bill of exceptions reserved to the action of the court in L county changing the venue to D county, there was no question for review on appeal.

**3.—Same—Prejudice—Change of Former Condition.**

Where the homicide occurred in L county and defendant filed his application for change of venue to D or R counties, and the court held that the same conditions preventing a fair trial in L county existed in D and R counties and refused the application on this ground and transferred the case to F county, from where it was retransferred to L county and then to D county, and the defendant applied for a change of venue from D to R county, and as grounds for such change relied upon the court's action refusing a change of venue on his former application from L to D county because the same condition of things existed in D as in L county, but the State controverted this and introduced testimony that said condition had changed in D county and that defendant could get a fair trial in D county, and defendant did not raise in his bill of exceptions the question that such conditions had not changed in his favor, there was no question for review and the court properly overruled defendant's application to change the venue from D to R county.

**4.—Same—Evidence—Leading Question.**

Upon a trial for murder where a State's witness stated that she saw defendant just before the shooting along a certain fence where deceased then was, and that the defendant had a gun in his hand, and the State's counsel thereupon asked the witness whether the defendant stooped as he came along the fence with the gun in his hand, to which question the defendant objected as being leading and suggestive of the desired answer that defendant was slipping up on the deceased.   Held, in as much as that the fact that defendant was going along the fence in a stooping position was clearly admissible, and the question did not necessarily suggest an affirmative answer there was no error.

**5.—Same—Evidence—Negative Answer.**

Where upon trial for murder a State's witness was asked whether he saw a stranger stoop over the deceased and place a pistol in the latter's pocket which was answered in the negative, there was no error.

**6.—Character of Deceased—Evidence.**

Where upon trial for murder defendant had voluntarily testified to some reports in regard to deceased seeking to burn certain houses; and where the testimony shows that the defense was relying on threats and previous assaults by deceased upon defendant, there was no error in the question of the State on cross-examination

of the defendant whether or not there ever had been a charge against deceased before, to which witness answered in the negative.

### 7.—Evidence—Res Gestae.

Upon a trial for murder there was no error in permitting testimony of a State's witness that when he entered the store where deceased was lying on his back in great agony and that he exclaimed, "Why did he do it?"; this being in a very few moments after the shooting occurred; especially where the bill of exceptions showed none of the environments further than above stated.

### 8.—Same—Evidence Motive.

Upon trial for murder there was no error in admitting in evidence the indictment against deceased charging him with an aggravated assault upon defendant, to show motive, the full effect of the testimony of the previous difficulty being before the jury.

### 9.—Same—Charge of Court—Self-Defense—Threats—Attack.

Where upon trial for murder the court charged fully upon the law of self-defense when one is attacked, etc., and also charged fully upon the law of self-defense in connection with threats and reasonable appearances of danger, all of which issues arose from the evidence, there was no merit in the contention that the court's charge made defendant's right of self-defense depend upon the fact that he was attacked by the deceased.

### 10.—Same—Verdict—Judgment—Entry on Sunday.

Where upon trial for murder it was shown by the record upon appeal that the case came on for trial on the 20th of June, and that on June 25th the jury were brought into open court, etc., and in due form of law returned into open court the verdict, etc., and that the same was received by the court and entered upon the minutes of the court, etc.; and there was not sufficient showing that the judgment was entered on Sunday, although it was conceded that the verdict was returned on that day, there was no error. The question as to whether a judgment can be entered on Sunday is not discussed.

### 11.—Argument of Counsel.

Upon a trial for murder, where exception was taken to argument of State's counsel, and much of the same was in reply to statement made by defendant's counsel, and did not go sufficiently beyond what was right and proper, there was no reversible error.

### 12.—Same—Continuance.

Where upon trial for murder, on application for continuance, the court qualified the bill of exceptions that there had been a previous application, and that the diligence was totally insufficient; and where it appeared that one of the witnesses was charged with perjury and was a fugitive from justice and out of the State, etc., there was no error in overruling the motion.

### 13.—Same—Change of Venue—Res Adjudicata.

Where the homicide occurred in L county, and defendant filed a motion for change of venue to D county and the court transferred to F. county because the conditions in D county were similar to those in L county; and thereafter the case being retransferred and redocketed in L county the State filed a contest against the original application to change the venue to D county, which the court overruled and thereupon changed the venue to D county, and the defendant made no objection and reserved no exception.· Held, the court having acquired jurisdiction in L county had authority upon his own motion to change the venue to D county regardless of said former application; and the condition and state of feeling which existed in D county at a prior term of the court was not the criterion of such condition at a subsequent term, and that question was not res adjudicata because of the court's action in refusing to change the venue to D county at a former term of the court.

Appeal from the District Court of Delta.   Tried below before the Hon. R. L. Porter.

Appeal from a conviction of manslaughter; penalty five years imprisonment in the penitentiary.

One of the principal State's witnesses described the shooting substantially as follows: that the deceased had just left her house and just as he turned to walk off, witness noticed defendant coming from his home; witness saw him right by the fence on the sidewalk; that he was coming up the street towards witness' house, walking pretty fast; that witness did not see anything in defendant's hand at first, but saw a gun afterwards; that defendant was holding it down by his side, and witness could only see the point of the gun when it flew up; that defendant had not said anything before witness saw that, and that he wasn't very far from deceased at that time; that witness said to the deceased to look out for defendant; that deceased turned around and held up his hand and said, "What have I done to you?" And defendant said, "You have done enough to me," and was holding his gun ready to shoot and pointing towards deceased; that deceased was not doing anything at the time defendant fired the shot at him; that deceased had hold of the paling with his left hand, and when the gun fired he threw up his right hand and hollowed; that deceased probably had his walking stick in the hand he held up; that witness heard a second shot but had run into the house. This statement together with the testimony stated in the opinion is sufficient under the various assignments of error.

*B. B. Sturgeon, B. M. McMahon, Fred Dudley* and *Bennett & Spearman,* for appellant.—On the question of change of venue: Holbolt v. State, 39 Texas Crim. Rep., 129; Lott v. State, 18 Texas Crim. App., 629; Williams v. State, 20 id., 359; Holmes v. State, id., 516; Early v. State, 1 id., 366. On question of res adjudicata: 27 Texas Crim. App., 370. On propounding leading question: Rangle v. State, 22 Texas Crim. App., 642; Kennedy v. State, 19 id., 618; Lutteral v. State, 14 id., 147; Youngman v. State, 35 Texas Crim. Rep., 80; Swain v. State, 12 Texas Ct. Rep., 816. On question of res gestæ: Jones v. State, 38 Texas Crim. Rep., 87.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of manslaughter, and his punishment fixed at five years confinement in the penitentiary. The opinion delivered on the former appeal is found in 10 Texas Ct. Rep., 26. To dispose of some of the questions arising on the plea to the jurisdiction and the motion to change the venue, it is necessary to recite a brief history of the case. The killing occurred in Lamar County, and on change of venue was transferred to Fannin County. Conviction was had. Appeal was prosecuted resulting in a reversal, because of error in changing the venue to Fannin County. When the case was first called in Lamar County, motion was made by appellant to change the venue to Red River or Delta County. After

hearing the testimony the court, as before stated, sent the case to Fannin County. One of the questions upon which reversal occurred was the order of the court changing the venue to Fannin County. When the mandate was returned to the District Court of Fannin County, the court there entered an order returning the case to Lamar County. It is urged that by the peculiar verbiage of the judgment retransfering the case the prosecution was actually dismissed from the docket, and therefore it was necessary to find another indictment in order to further prosecute appellant. The judgment retransfering the case, among other things recites that the venue in said cause had been improperly and erroneously changed to Fannin County, Texas, from the District Court of Lamar County, at a former term of said District Court of Lamar County; and it further appearing that by reason thereof the District Court of Fannin County has no jurisdiction of said cause. It is ordered, adjudged and decreed by the court that said cause be stricken from the docket of this court, and the cause be transferred back to the District Court of Lamar County, of the 6th judicial district, and that the clerk of this court transmit to the clerk of the District Court of Lamar County, for the 6th judicial district, forthwith, all of the papers, records and mandates in this cause, together with the bill of indictment and the appearance bond of defendant herein, to be refiled and docketed by said clerk of the District Court of Lamar County, Texas, on the docket of said court, together with a certified copy of this order and decree." We cannot concur with the view of counsel that this was a dismissal of the prosecution. The wording of the decree and order itself excludes this idea, and shows the only purpose of entering the decree was to retransfer the case to Lamar County in obedience to the mandate of the court of criminal appeals. There is nothing to indicate the purpose on the part of the State in making the motion to retransfer, or the court in entering the judgment thereon, to dismiss the prosecution. The only purpose was to send the case back to Lamar County. Nor do we think that article 471, Code Criminal Procedure, has any reference to cases that have been improperly transferred on change of venue. That article has reference only to cases that have been improperly transferred from one court to another in the county where the indictment was preferred; that is, from a court not having jurisdiction to one that did. It has no connection with or relation to transfers on change of venue where the cases go from one county to another. When the court met in Lamar County, the judge transferred the case on change of venue to Delta County, and it seems from the bill of exceptions and the record, that he used the former application of the appellant to change the venue as the basis for his action. We will let that matter rest, with the statement that a bill of exceptions was not reserved in Lamar County, to the action of the court changing the venue to Delta County. In order to bring before the court for review on appeal the action of the court changing the venue from one county to another, a bill of exceptions must be reserved in the county from which the venue was changed. This was not done.

When the case was called in Delta County for trial, plea to the jurisdiction was urged, insisting that the prosecution had been dismissed in Fannin County. It was further urged that the change of venue should have gone from Fannin to Red River. We do not purpose discussing this matter any further, and dispose of it by the statement that a bill of exceptions was not reserved as above stated.

This motion having been overruled, appellant filed an application to change the venue from Delta to Red River County. The evidence introduced and the grounds relied upon as a basis for this change of venue was the former decree in Lamar County, wherein the court adjudicated, in the first instance, that the same condition of things existed in Delta as in Lamar County, and in which the court refused to change the venue to Delta on account of such condition. The State controverted this, and introduced in support thereof the testimony of the sheriff of Delta County. His evidence was to the effect that there was no such prejudice against appellant as precluded a fair trial; and further attacked the only compurgator of appellant, by showing he was a comparative stranger in the county, not having lived there more than one or two years; and that his means of knowledge were not sufficient to justify his supporting affidavit. The circumstances found by the court existing in Delta County originally may have been true or not. Even if they were true at the time the court so held, it would not be conclusive evidence of the fact that the condition of public sentiment had not changed, and it would not be sufficient as a predicate for this court to hold erroneous the ruling of the trial court in the subsequent application. In order to have raised such question properly, the condition of the public sentiment in regard to appellant, and that it was adverse, should have been made to appear by the evidence and incorporated in bill of exceptions on the second application. The fact that the court had at a former term in Lamar County, adjudicated that the circumstances were adverse to appellant having a fair trial in Delta County, was not a sufficient basis for the change of venue on the subsequent application from Delta County. As we understand the law in this State, the fact that prejudice may exist at one term of the court is not evidence that it exists at a subsequent term. The condition of the public feeling may have undergone a change, and the only evidence we have in regard to it, is from the sheriff, which shows that there was no such prejudice in the county as militated against a fair and impartial trial. So there was no error in the court refusing to change the venue from Delta to Red River County as this record presents the matter to this court.

Miss Jennings testified that she saw defendant, just before the shooting, coming towards South Main street, along the partition fence between defendant's house and the Brown house, where deceased then was with the gun in his hand. The State then asked the following question: "Did the defendant stoop as he came along the fence with the gun in his hand." Objection was urged to this question as being leading and suggestive of the desired answer; and that it was intended by this

to show that appellant was slipping up on the deceased. The objections being overruled, she answered in the affirmative. While the question may have been somewhat leading in its character, yet the answer was proper, if the question had been free from the intimation of its being leading. It is hardly sufficiently suggestive of an answer on the part of the witness that appellant was slipping up on the deceased. The fact that he was going along the fence in a stooping position was clearly admissible; and if it be conceded that the question was leading in its character, still it is not of sufficient importance to require a reversal. But it did not necessarily suggest an affirmative answer.

Dr. Hooks was asked if he saw a stranger or anybody place a pistol in the pocket of deceased while stooping over him; and whether or not he knew a pistol was placed in the pocket of deceased while lying on the ground. Objection was urged, and overruled; and the answer was in the negative. This could not have injured appellant. An affirmative answer might have possibly made this ruling error. But as the answer was in the negative there was nothing drawn out from the witness calculated to injure appellant.

Appellant on cross-examination was asked, whether or not there had ever been any charge against McLaughlin, the deceased, except the one in which the difficulty occurred between appellant and McLaughlin. The answer was in the negative. The objection was that it tended to place McLaughlin's character in issue before the jury. The court qualifies the bill by stating that appellant had voluntarily testified to some reports in regard to the deceased seeking to burn certain houses. Whether this qualification has anything to do with the bill or not, we do not see how this testimony could have injured appellant. He was relying upon threats made by deceased. Deceased had made a previous assault upon appellant, which was shown. We do not believe there was any error in admitting this testimony. Nor is it in conflict with the former opinion of this court in this case, where the State was erroneously permitted to prove the good character of deceased and his chivalrous bearing toward women.

Witness Maxwell was permitted to testify that when he entered the store where deceased was lying on his back, with his head in Mrs. Breneman's lap, he was struggling and groaning and in great agony; and that he exclaimed, "Why did he do it?" This was in a very few moments after the shooting occurred. Witness had gone hurriedly the distance of about one hundred yards; and deceased was shown to be in great agony —precluding the idea of a concocted story. It was not urged that this was an opinion of the witness, put in the form of a query. The main insistence was, that it was not res gestæ; and did not preclude the idea that parties had so worked upon his mind as to induce him to make the statement. The bill of exceptions shows none of the environments further than as stated, and we think precludes any idea of a concocted story.

Nor was there any error in admitting in evidence the indictment

against deceased, charging him with an aggravated assault upon appellant. This was a previous matter, and it was introducable for the purpose of showing the relations of the parties and the motive on the part of appellant. Crass v. State, 31 Texas Crim. Rep., 312.

Objection is urged to the 13th, 14th and 15th paragraphs of the charge, because they made appellant's right of self-defense depend upon the fact that he was "attacked" by deceased. These charges, taken as a whole are not subject to this criticism, as we understand them; but present clearly, in appellant's favor the law of self-defense. To illustrate, the court charges the jury: "Homicide is justifiable and is no offense against the law when committed in necessary self-defense, this occurs, when one is attacked in such a manner as to produce in his mind a reasonable apprehension of death or serious bodily injury, or where it reasonably appears to one from the act or acts coupled with the words of the person killed that he, the slayer, is thereby in danger of death or serious bodily injury, and he kills to protect himself from such danger, then such killing is deemed to be justifiable self-defense." Again: "When a person is attacked by his adversary, and his adversary makes a demonstration as if to draw a weapon and his adversary retreats, and it reasonably appears to the person so attacked or against whom the demonstration is made that his adversary is only retreating for the purpose of getting into a better attitude or condition to carry on or renew such attack, then the person so attacked, or the person against whom the demonstration has been made has the right to inflict violence upon his adversary so long as such reasonable appearances of danger continue." The same charge is given in connection with threats. This charge is favorable to appellant. It is true that he charges with reference to an attack, but the charge goes further, and gives the appearances of danger independent of the attack, and in the alternative. So it places before the jury two avenues of escape for appellant along the theory of self-defense, independent of threats; and then, in addition gives the same charges in connection with threats. Swain's case, 12 Texas Ct. Rep., 812; Phipps v. State, 34 Texas Crim. Rep., 560, and 608, are not in point. In those cases the charge on self-defense confined appellant's right to an attack, omitting the question of appearances of danger from any other view than from such attack. In this case, however, he is given the benefit of both theories, and instead of it being injurious, in our judgment it was favorable to appellant.

Appellant assigns error on the recitation in the judgment, that the verdict was received and the judgment entered on June 25, 1905, and that this court judicially knows that day was Sunday. It is shown that the case came on for trial on the 20th of June. The judgment makes the following recitation, in regard to the return of the jury into court, to wit: "June 25, 1905, were brought into open court, by the proper officer, and defendant and his counsel being present, and in due form of law returned into open court, the following verdict, which was received by the court and is here now entered upon the minutes of the

court to wit:" and then follows the verdict. It is contended that the court will take judicial knowledge of the fact that June 25, 1905, was Sunday. Concede this to be true, this recitation does not show that the judgment was entered on that day. It simply recites the fact that the verdict was received and entered upon the minutes of the court. As to the legal authority for this act, there can be no question. This is not a sufficient showing that the judgment was entered on Sunday, and it will be noted in this connection that the point was raised for the first time on appeal and was not urged in the court below. If as a matter of fact the judgment was entered on Sunday, it was easily susceptible of proof. There is no evidence showing that the judgment was so entered, and the recitations in the judgment do not manifest that the judgment was entered on Sunday. Brown v. State, 32 Texas Crim. Rep., 119. It is unnecessary, in the condition of the record as this point is presented, to discuss further the question as to whether a judgment can be entered on Sunday, where the verdict is returned on that day. It is not shown that such was the case here, and therefore we do not discuss that phase of the law.

Without reviewing the bills of exception at length in regard to the argument of attorneys for the prosecution, we are of opinion that as qualified by the trial judge, the argument did not go sufficiently beyond what was right and proper to authorize a reversal. Much of the argument complained of was in reply to statements made by appellant's counsel. As the record is presented to us we do not believe the errors complained of are of such importance as require a reversal of the judgmen, and it is therefore affirmed.

*Affirmed.*

### ON REHEARING.

#### June 28, 1906.

DAVIDSON, PRESIDING JUDGE.—At the Dallas Term, the judgment was affirmed. On motion for rehearing it was transferred to the present term for disposition.

Appellant insists that the original opinion is in several respects erroneous. Among others, that we should have reversed because of a failure of the trial court to grant a continuance. The court qualifying the bill says that there had been a previous application for continuance which had been overruled for one of the witnesses, and that the diligence was totally insufficient for both witnesses. In regard to the second witness, he was indicted for perjury, and was a fugitive from justice, and the application states that information had recently been received by appellant to the effect that witness was probably in Miller County, Arkansas; and no effort had been made to get his testimony because since the alleged discovery of his whereabouts, sufficient time had not elapsed to prepare the depositions. We do not believe the showing was sufficient. The application does not show the efforts to ascertain the whereabouts of the witness who had left the State, and in addition to

this, the fact that he was indicted for perjury would strengthen the proposition that they would not be able to find and obtain his testimony. This being a subsequent application, the question of diligence is much more important and requisite than if it had been the first application. We do not believe there was any error in the court's refusal to continue the case.

Without going into a restatement of the facts in regard to the change of venue from Lamar to Fannin County, and retransfer to Lamar and filing and redocketing the case in Lamar County, we refer to the original opinion for these matters. Perhaps it may be necessary to state this much in addition in regard to the transfer from Lamar to Delta County after the case had been retransferred to Lamar from Fannin County. When the case was called in Lamar County, after its retransfer, it is stated in the bill of exceptions that Judge Denton (of the Lamar District Court) sustained appellant's demurrer to the State's contest of his original application for a change of venue from Lamar to Delta County. It was upon the hearing of this original application that Judge Denton transferred the case to Fannin County, over the protest of appellant, and it was upon appellant's application that the case was returned from Fannin to Lamar County. When Judge Denton sustained appellant's demurrer to the State's contest after the retransfer, he ordered the case sent to Delta County. It is contended by appellant that in doing this, Judge Denton having eliminated the State's contest, acted upon the original application to change the venue, filed at a previous term of court as a basis of the order changing the venue to Delta County; and that this was error, because Lamar County was without jurisdiction to entertain the case on retransfer from Fannin County. In fact, as we understand appellant's contention, when the case was retransferred from Fannin to Lamar County, by the peculiar expression of the judgment the cause was entirely dismissed, and that all jurisdiction or attempted jurisdiction in Lamar County by reason of the transfer was void, and that court could not acquire jurisdiction. If the order of retransfer from Fannin to Lamar County was correct, then Lamar County obtained jurisdiction, and Judge Denton had authority to dispose of the case as if it had not been transferred to Fannin. We are of opinion that the retransfer and redocketing and refiling of the case in Lamar County was legal, and that court obtained jurisdiction and authority over the case and the person of the defendant. Defendant appeared before the court and was present in court at the time the order was entered changing the venue from Lamar to Delta County, and made no objection and reserved no exception. When the case was called in Delta County, plea was filed to the jurisdiction of Delta County, because of the fact that the case was improperly transferred from Lamar to Delta County. We do not agree with appellant's contention in regard to this matter. We believe, in the first instance that Lamar County had jurisdiction; and second, that Judge Denton had the authority, either of his own motion, or for any of the reasons

set out in the statute, to change the venue. He did have the authority to change the venue, and in our judgment if appellant wanted to raise any question in regard to that change of venue, and the orders moving the case from Lamar to Delta, he should have reserved his bill of exceptions at the time the order was entered in Lamar County. Our statute requires this, and the uniform and unbroken line of decisions in this State sustains this view. If as a matter of law or in fact Lamar County did not acquire jurisdiction by reason of the retransfer from Fannin to Lamar, then appellant's contention would be correct and the authorities cited by him would be in point and sustain that contention. But, as before stated, we are of opinion that Lamar County did have jurisdiction by reason of the transfer from Fannin to Lamar County.

This plea to the jurisdiction of Delta County being overruled appellant filed an application to change the venue from Delta to Red River County, relying mainly upon the previous ruling of Judge Denton, overruling appellant's original application to transfer it to Delta, and ordering it to Fannin County, contending that this order of Judge Denton at the previous term of the court was res adjudicata of conditions in Delta County, as being adverse to appellant obtaining a fair trial in that county. One of appellant's counsel also testified in the case identifying these matters and connecting them up so as to show that there was no further application made to change the venue from Lamar County than that originally filed by appellant. The State introduced the testimony of Tuberville, sheriff of Delta County, showing that appellant under existing conditions could obtain a fair trial in said county. The trial judge explains this bill of exceptions at some length, showing that when the case was transferred from Lamar to Delta, there was no objection in Lamar County urged by appellant and the matters were raised for the first time in Delta County. In empaneling the jury he saw nothing to indicate that there was any sufficient feeling in the county to authorize the conclusion that appellant could not obtain a fair trial. Be that as it may, the only testimony that was introduced as to the then condition of the public mind and state of feeling in Delta County was through the testimony of the sheriff of Delta County. So we gather from the contest over this application to change the venue from Delta to Red River County, that appellant relied upon the previous orders and rulings of Judge Denton in Lamar County, finding that a state of feeling at that time existed in Delta County, which authorized him to refuse in the first instance to transfer the case to that county; and the State by the testimony of the sheriff that at the time of the trial such a state of feeling did not exist. It has been the uniform ruling in this State in regard to this question, that the condition and state of feeling in the county at a prior term of the court is not the criterion of the condition and state of feeling at a subsequent term of the court. We are cited to Blain v. State, 34 Texas Crim. Rep.,

448, to sustain the contention, we suppose, that the state of feeling as found by Judge Denton originally existing in Delta County, still existed subsequently and at the time of the application for a change of venue from Delta to Red River County. If such was the intended contention, the Blain case does not support it, as we understand the case. In the Blain case this language is found: "These records show, that on the 18th day of July, 1892, as to said case, which was an indictment for murder, there existed against the defendant, in connection with said case, so great a prejudice that he could not get a fair and impartial trial, in the opinion of the judge trying the motion for a change of venue, and that this state of prejudice still existed against defendant on July 25, 1894, in said case, which was a new indictment for the same charge of murder. Said records, giving them their fullest effect, only showed that in connection with said charge of murder there existed prejudice at that time against defendant. It cannot be held, as claimed, that they show, even as to said case that such prejudice still existed when this case was tried in March, 1895, and much less do they establish that such prejudice existed against the defendant with reference to the case for which he was then being tried. Conceding, however, that they were admissible as evidence tending to show the standing of defendant in Gonzales County as to the prejudice against him at that time, we will consider said orders, along with the other testimony in the case offered by the State and the defendant, on the question of a change of venue." The Blain case is not authority that the matter was res adjudicata. The effect of the decision is to hold the other way. Nor do we understand that the Blain case is out of line or out of harmony with the general current of opinion in this State or with the original opinion in this case. The matter in regard to the previous action of Judge Denton in Lamar County in regard to the condition of things in Delta County was introduced in evidence by appellant, and was met by the State through the testimony of the witness Tuberville. The fact that Judge Denton had decided adversely to appellant's contention in regard to Delta County in the original application was used as a fact to be taken into consideration by the district judge of Delta County on the trial of the motion to change the venue from that county to Red River. It was not a conclusion, nor was it res adjudicata any further than to ascertain the condition of feeling in Delta County at the time Judge Denton rendered his decision. That decision could not have effected the future state of feeling in Delta County. The feeling in that county was subject to change, and when the application under discussion was made the condition of the feeling towards appellant in Delta County was the correct criterion, and not that previously ascertained by Judge Denton in the original application in Lamar County.

So we are of opinion that the retransfer from Fannin to Lamar was legal and correct. That Lamar County had acquired jurisdiction of the case and person of appellant by the retransfer; that Judge Den-

ton had the legal authority to transfer the case from Lamar to Delta County on change of venue, and that in order to revise his action in the matter it was necessary for appellant to reserve a bill of exceptions. We do not believe with counsel that it was a question of jurisdiction under the record before us. His different pleas to the jurisdiction of the different courts are not well taken.

It is urgently insisted that the court should have reversed the case on account of the testimony of Miss Jennings. We have reviewed this question again, and the authorities cited by appellant to support his contention. In most of the cases cited, the judgments on appeal were affirmed. In Rangel v. State, 22 Texas Crim. App., 642, the question was there held to be leading and suggestive of the answer. However, the judgment was reversed and in part upon another proposition. While it was held the trial court was in error in regard to the admission of the testimony of the witness Bravo, it does not put the reversal upon that ground; in fact we are led to believe that it was put upon the error in the court's charge. We have not been cited to any case where a judgment was reversed exclusively for the reason that leading questions had been asked and answered. It is not impossible that such a case might arise. But as before stated, we do not believe that this question was sufficiently suggestive of a desired answer to place it within the category of a leading question that would require a reversal of the judgment by reason of any damaging effect. The answer of the witness could have been yes or no to the question. It was in the affirmative. But it barely suggested any more an affirmative than a negative answer, and if so rather slightly. We do not believe, it is of sufficient importance, even if erroneous, to require a reversal of the judgment.

It is urgently insisted that we were in error in holding that the trial court did not err in admitting in evidence the indictment against deceased charging him with an aggravated assault upon appellant. The objection mainly was that this was a matter occurring between other parties, and for which appellant was in no way responsible, and could in no manner be bound. The mere fact that the grand jury returned an indictment was not binding upon appellant, and may not have effected him one way or the other, so far as the deceased is concerned. But the character of testimony has always been introducable, as we understand the authorities in Texas. In this connection we might state that the record shows by verbal testimony that deceased had shot at appellant three times prior to this transaction, and it seems to have formed the basis of the indictment introduced in evidence. Previous difficulties between the accused party and the deceased (for whose death the accused was being tried) are introducable on the question of motive, and even for other reasons. Kunde v. State, 22 Tex. Crim. App., 65; Hudson v. State, 28 Texas Crim. App., 323; Barkman v. State, 52 S. W. Rep., 73; Attaway v. State, 41 Texas Crim. Rep., 397; Weaver v. State, 46 Texas Crim. Rep., 617. If it

be conceded that we are in error in regard to the admission of this indictment against deceased, as this record is before us it will be, in our judgment, harmless or at least of not sufficient gravity to require a reversal. The facts in regard to the shooting of appellant by deceased, which occurred sometime prior to this homicide, and forming the basis for said indictment, were fully proved and without objection. The full effect of the previous difficulty was before the jury through the testimony of witnesses.

We have gone over this case with considerable care, because of the earnestness with which appellant's counsel urged the grounds of the motion for rehearing, but we do not believe there was any such error committed on the trial of the case as would justify a reversal.

The motion for rehearing is overruled.

*Overruled.*

Brooks, Judge, absent.