### Joe Graham v. The State.

#### No. 16.   Decided October 27, 1909.

**1.—Murder—Evidence—Prior Difficulty—Deadly Weapon.**

Where, upon trial for murder, the evidence showed that the deceased was cut with a sharp instrument, supposed to be a knife, a few moments after a prior difficulty, there was no error in permitting the State to show that the defendant had a knife during said prior difficulty, especially where defendant denied having had a knife and of cutting the deceased.

**2.—Same—Evidence—Dying Declaration—Res Gestae.**

Upon trial for murder resulting in a conviction for aggravated assault, there was no error in admitting testimony that the deceased, shortly after the last difficulty, told the witness that he was going to die, and that upon being asked who did it answered that it was the defendant, this was both *res gestae* and

dying declarations. Following Morgan v. State, 54 Texas Crim. Rep., 542, and other cases.

### 3.—Same—Bill of Exceptions—Objections to Evidence—Practice on Appeal.

Where, upon appeal from a conviction of aggravated assault, the grounds of objection were not verified in any manner by the bill of exceptions, the approval of the bill does not certify the correctness of the grounds of objection, but only verifies the fact that the grounds of objection were urged.

### 4.—Same—Evidence—Practice on Appeal.

Where, upon appeal from a conviction of aggravated assault, it appeared from the record that the appellant, in answer to a question whether he knew who cut the deceased, answered in the negative, there was no error.

### 5.—Same—Evidence—Defense of Another.

Upon trial for murder, where the defendant claimed that he acted in defense of his brother, and it was shown that said brother had received wounds on the head, there was no error to permit the State to show that another person than deceased inflicted said wounds, and that the deceased had no pistol, knucks, or knife with which these wounds could have been inflicted.

### 6.—Same—Evidence—Rebuttal.

See opinion for evidence in rebuttal introduced by the State which was admissible for the due administration of justice.

### 7.—Same—Evidence—Reputation for Truth and Veracity.

Where, upon trial for murder, the credibility of the testimony of a State's witness was attacked by introducing testimony to contradict him, there was no error in permitting the State to introduce testimony supporting the general reputation for truth and veracity of the witness so attacked.

### 8.—Same—Evidence—Contradicting Witness.

Upon trial for murder there was no error in rejecting testimony offered in support of the general reputation for truth and veracity of the defendant's witness who had attacked the testimony of a State's witness, and after said State's witness's general reputation had been sustained by witnesses for the State.

### 9.—Same—Argument of Counsel.

Upon trial for murder, where State's counsel, among other remarks, stated that the jury knew that the history of the county of the prosecution ran red with the blood of murders committed within its border, but his other remarks in connection therewith were legitimate, and there was no charge requested by the defendant to withdraw the objectionable argument from the jury, but simply an objection thereto, and the defendant was convicted of aggravated assault, there was no reversible error.

### 10.—Same—Charge of Court—Requested Instructions.

Where, upon trial for murder, the requested instructions were, in substance, the same as the charges given by the court in regard to the matters mentioned in the special instructions, there was no error in refusing them.

Appeal from the District Court of Limestone. Tried below before the Hon. L. B. Cobb.

Appeal from a conviction of aggravated assault; penalty, two years confinement in the county jail.

The opinion states the case.

*James Kimbell.* and *Doyle, Jackson & Harper,* for appellant.—On question of argument of counsel: Crow v. State, 33 Texas Crim.

Rep., 264; Fuller v. State, 30 Texas Crim. App., 559; Jenkins v. State, 49 Texas Crim. Rep., 457, 93 S. W. Rep., 726.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Under an indictment charging murder, appellant was convicted of aggravated assault, his punishment being assessed at two years confinement in the county jail.

It is insisted that the court erred in admitting the testimony of Bennett, Carter, Petty and others in regard to a difficulty in a house where there was dancing a short time prior to the difficulty at the gate some distance from the house in which the killing occurred for which appellant was convicted. The record discloses that there was a dance going on at the house and a difficulty arose between Jesse Graham, brother of appellant, and John Carter; that appellant and his sister went to where their brother and Carter were engaged in a difficulty and in which George Bennett was participating. Evidence was admitted to the effect that when appellant caught Bennett to pull him away from his, appellant's, brother appellant had a knife in his hand. The court says that this was all the testimony in regard to the first difficulty, which was permitted to go to the jury, and he thus qualifies the bill of exceptions. The bill sets out detailed statements of witnesses in regard to the difficulty in the house and the circumstances attending it. As before stated, the court qualifies this bill and all the bills in regard to the matter by stating that the only evidence in regard to this difficulty admitted was as to appellant having a knife at the time. As qualified by the court these bills show no error. The evidence introduced to show that appellant exhibited a knife in the difficulty in the house was admissible and pertinent to the case. The record shows that there was a serious contest in regard to the fact that appellant had a knife during the evening. The State's evidence shows that he did, while his shows to the contrary, he himself testifying that he not only had no knife at the time, but that he left his knife at home when changing his working clothes for those he wore to the party. Andrews was cut with a sharp instrument, supposed to be a knife, during the difficulty at the gate a few moments after the difficulty in the house. The State's contention was that appellant did the cutting and introduced evidence to that effect. Appellant testified himself and introduced evidence to sustain his testimony that he did not cut Andrews and was in no way guilty of participating in the difficulty which resulted in Andrews' death. When Jesse Graham and Carter were separated in the house Jesse went to the gate, or was carried to the gate by appellant with a view of carrying him home. When Jesse reached the gate he called to some one to ask Carter to come out if he

wanted to fight and he would fight him. Andrews walked up to where Jesse Graham was and challenged Jesse for a fight and they began fighting. The State's contention is that appellant went into the fight at that point and used his knife upon the deceased, Andrews. Andrews died shortly afterwards. Under this state of case we are of opinion that the evidence the court says he permitted to go before the jury to the effect that appellant was seen in the house with a knife in his hand at the time he pulled Bennett out of the difficulty between Carter and his brother Jesse was admissible. Any fact going to show that appellant had a knife on the occasion was legitimate and admissible. These matters are presented in several bills and it is deemed unnecessary to review all of them. They are substantially the same.

2. Compton was permitted to testify, in connection with evidence placing him at the party, among other things, that he did not see any part of either difficulty and knew nothing personally about it until it was over when he was informed that deceased had been cut, and it was in the house or on the gallery when he first saw Andrews. He asked Andrews who did it. Appellant objected to this because this testimony would not be res gestae, took place too long after the transaction and after deceased had been carried or aided to the gallery and had stopped there and remained some time and had been carried in the house. State's counsel upon this objection stated it was not offered as res gestae, but as dying declarations and the witness answered that Andrews said he was going to die and witness said, "I guess not," and Andrews said, "Yes, I am." State's counsel then repeated the question, "Did he tell you who did it?" Over appellant's objection the witness answered, "I asked him who did it and he said Joe Graham did it. Andrews' mind seemed to be clear; he was perfectly rational at the time he made this statement." Being crossed in regard to this matter witness stated: "He told me that Joe Graham did it. It was in answer to a question from me, and immediately after telling me who did it, he asked me to send for a doctor and send for his wife." That it was at this juncture he said he was going to die in answer to questions from the witness; and shortly thereafter he made the remark in regard to sending for his wife and the doctor. Appellant moved to exclude this testimony because it was not a voluntary statement and because after making same he asked that a doctor be called. Mrs. Bosley testified, in substance, as did the other witnesses. The bill is not as clear as it might be as to the time elapsing between the stabbing of the deceased and the time of the statement, but it is apparent from the bill that it was but a very short time. After the difficulty deceased was aided to the gallery, and in answer to the questions, as stated above, he made the statements about which the witnesses were permitted to testify. We

are of opinion the testimony was res gestae. It was also admissible as dying declarations. Ingram v. State, 43 S. W. Rep., 518; Morgan v. State, 54 Texas Crim. App., 542. There is nothing to indicate that it was not, and the evidence, to our minds, shows that it was done immediately or within a few moments after the difficulty. The court in no way qualifies the bill and leaves it in the way appellant wrote his grounds of exception. Grounds of objection are not verified in any manner by the bill, and the court's approving the bill does not certify the correctness of the grounds of objection. His approval of the bill only verifies the fact that the grounds of objection were urged, but does not verify them.

3. While the appellant was testifying in his own behalf, and after having testified in answer to questions from the State, that he did not know who cut or stabbed George Andrews, he was then asked by the prosecution, "Do you now have any idea who cut or stabbed the deceased, George Andrews?" Various objections were urged to this question, which were overruled, and the witness answered, "No, he had no idea who did it." There is no error shown in this bill. If the question was improper, the answer was in no way injurious to appellant.

4. The witness Johnson was permitted to testify in rebuttal for the State that he struck Jackson Graham over the head with a piece of iron, and that when he jerked Jackson Graham loose from George Andrews he turned on him, Johnson, and he hit him on the head; that he helped undress Andrews and found no pistol, knucks or bottle of whisky. Various objections were urged to this. As the bill presents this matter we see no error and we think the testimony was admissible. There was evidence of the fact that Jackson Graham was in some way mixed up in the trouble and had two wounds on the head, and the theory of appellant seems to have been that if appellant used a knife at all it was in defense of his brother Jackson, or Jesse, or both of them, and in support of this the evidence was introduced showing that Jackson Graham had two wounds on the head. The further theory was that these wounds were, or may have been inflicted by the deceased. At least this may have been a theory from the testimony. The difficulty was at night, in the dark, and there were several mixed up in the fight under the facts shown on the trial and there was evidence upon which the jury might find that Jackson Graham was in the trouble and received the two wounds on the head. If deceased inflicted them it would aid appellant's theory of defense of his brother. If another man struck Jackson, it was a fact to go before the jury to be determined by them as to the reasonableness of appellant's theory. Under the evidence it was clearly admissible to show that the deceased had no pistol, knucks or knife with which these wounds or any wound could have been inflicted.

5. The witness Hines testified in rebuttal that he heard deceased say who killed him and that it was appellant. The trouble with Carter was in the house. He began calling for Carter when at the gate and Andrews came up and asked what was the matter, and appellant said George Bennett was trying to run over him, and Andrews replied he would not let him; appellant asked what was it to him and started towards Andrews and the fight began. This evidence was clearly admissible and the fact that it was brought out in rebuttal would not be proper grounds for rejecting it under the statute which provides that testimony which is material or necessary for the due administration of the law may be introduced at any time before the argument is closed. It may be stated generally in this connection in regard to grounds of objection to the testimony in rebuttal that it is not well taken under our statute, for testimony that is necessary to the due administration of justice may be admitted as before stated.

6. Pat Richards testified for the State. Appellant attacked his testimony by showing he gave different versions of the matters about which he Richards testified and contradicting him after laying the predicate. In this attitude of the case several witnesses were introduced by the State who testified to the good reputation for truth and veracity of said Richards. This was permissible. Whenever the reputation of a witness has been attacked that reputation may be sustained. The authorities are all in accord on this question.

7. Cochrum was a witness who contradicted and impeached the statements of Richards and testified that Richards had made statements to him and others on the night of the killing. The statements to which they testify as made by Richards was not in harmony with but antagonistic to the testimony of Richards on the stand. After the sustaining evidence of Richards' reputation was admitted, appellant offered to prove the good reputation for truth and veracity of Cochrum. This was rejected and a bill reserved. We are cited to no authorities that would justify this evidence. Richards' testimony had been attacked by Cochrum's testimony in which Richards is shown to have made statements out of court contradictory of statements which he made on the trial. It was proper to sustain him by showing his good reputation. Cochrum was one of the impeaching witnesses. It is not the proper practice, nor correct that under the circumstances, Cochrum's reputation for truth and veracity could be shown. It was the truth and veracity of Richards that was at issue. If there is any authority that would sustain appellant in this proposition, we are not aware of it. There must be an end to this character of testimony at some point in a trial. We believe the ruling of the court was correct in refusing the testimony.

8. The district attorney in his argument made use of the following language: "Gentlemen, they insist that Joe Graham, the

defendant, did not cut George Andrews. He had shrewd and able lawyers, and if you acquit the defendant and the State should indict Jackson Graham for this crime, they will be here saying he did not do it. You know that Joe, the defendant, 'did kill him,' and if we try Jackson Graham, they will say Jackson did not do it, and will have Joe Graham get on the stand then and swear that he killed George Andrews, and turn Jackson loose. If you acquit the defendant now, he can never be tried again, and if you do not convict this defendant now, nobody will ever be convicted for this crime. You know the history of Limestone County. It runs red with the blood of murders committed within its borders, and somebody ought to be punished for this crime." At the time this language was used appellant requested the court to stop the district attorney and withdraw the remarks and instruct the jury not to consider the language which had been used and instruct the jury that it was immaterial to them whether or not the State could convict any other person; that all they were to do was to pass on whether or not this defendant committed the crime which the court declined to do. They further contend that as Jackson Graham was a brother of appellant that this language was calculated to cause the jury to think that Jackson Graham could not be convicted, and that this was the only chance to convict anybody, and that somebody ought to be punished, because the district attorney claimed that Limestone County run red with the blood of murders committed in its borders. The principal objectionable statement was that part of the argument of the district attorney in which he stated that the jury knew the history of Limestone County; that it runs red with the blood of murders committed within its borders and somebody ought to be punished for this crime. Of course, if it was a crime somebody ought to be punished for it. The district attorney, we think, was fairly within proper bounds in urging the conviction of appellant and under the facts it was legitimate argument or conclusions—at least, not erroneous—for him to make the statement as to what might happen if appellant was acquitted and Jackson Graham tried. The facts indicate that both were in the trouble and that Jackson Graham had two wounds on his head when the trouble was over. As above stated, the objectionable portion of the argument was that part in which he stated that the jury knew the history of Limestone County and it runs red with the blood of murders committed within its borders. That was illegitimate argument. It was no reason why appellant should be convicted, however many murders may have been committed, and however many violations of the law had occurred outside of the facts of this case. An accused party should not be convicted on his trial on account of the fact that there had been other murders or other offenses than that for which he is being tried. Our law guarantees

that an accused shall have a fair trial on the facts and the law of the particular case in which he is on trial. There was no charge requested by appellant to withdraw this argument from the jury. The only request in this respect was made at the time of the statement. While this allusion was not proper, we are of opinion that it was not of sufficient importance to require a reversal of this judgment in the absence of a requested instruction by appellant, and this is strengthened by the fact that appellant was acquitted of the homicide and only convicted of an aggravated assault.

9. There were some requested instructions by appellant which were refused by the court, and also some exceptions to the charge. With reference to all these charges refused by the court which bore upon the homicide phase of the case, we deem it unnecessary to discuss, but are of opinion that the court's refusal to give them was correct. The requested instructions were in substance the same as the charges given by the court in regard to the matters mentioned in the special instructions. There was, therefore, no error in refusing them. It is not necessary for the court to repeat his charges in different form. Where the court has applied the law to a given state of facts and the accused requests a special instruction on the same matter, in substance the same as the charge given by the court, it is not error for the court to refuse such special charges.

As the record is presented to us we are of opinion there was no such error as requires a reversal of this judgment. It is therefore affirmed.

*Affirmed.*

[Rehearing denied December 22, 1909.—Reporter.]