### W. D. MOORE v. THE STATE.

#### No. 5347. Decided June 4, 1919.

**1.—Murder—Jury—Jury Law—Challenge for Cause.**

In the absence of anything which would show that the juror was subject to a challenge for cause; that he was excused on peremptory challenge; that no objectionable juror was forced on the defendant, who failed to exhaust his peremptory challenges, there was no reversible error. Following Hudson v. State, 28 Texas Crim. App., 338, and other cases.

**2.—Same—Jury and Jury Law—Peremptory Challenge.**

Where the court offered to restore a challenge for cause, where the juror was excused upon peremptory challenge, and the court followed the correct procedure under the statute, there was no error. Following Cannon v. State, 59 Texas Crim. Rep., 405.

**3.—Same—Evidence—Cross-Examination.**

Where defendant claimed self-defense, there was no error in his cross-examination to permit the State to ask the question whether he shot in self-defense when he shot deceased when he was crawling on his hands, to which other State's witnesses had testified. Following Weaver v. State, 68 Texas Crim. Rep., 214, 150 S. W. Rep., 785, and other cases.

**4.—Same—Evidence—Practice on Appeal.**

Where the bill of exceptions related to the exclusion of testimony which was subsequently admitted, there was no error.

**5.—Same—Evidence—Leading Questions.**

The inquiry as to the appearance of defendant, as to whether he was excited or irritated, was not objectionable as leading. Following Cannon v. State, 59 Texas Crim. Rep., 398, and other cases.

**6.—Same—Jury and Jury Law.**

The failure to swear all the jurors at one and the same time was an irregularity which was not available, when raised for the first time on motion for new trial. Following Jones v. State, 37 Texas Crim. Rep., 434, and other cases.

### 7.—Same—Suspended Sentence—Harmless Error.

Where the defendant was convicted of murder, the suspended sentence law was not applicable, and the court's ruling that the application for submission of that issue came too late was harmless. Distinguishing Wilson v. State, 210 S. W. Rep., 802.

### 8.—Same—Provoking Difficulty—Theory of Defense—Intent.

Where, upon trial of murder, the defendant insisted that if it be conceded, that defendant's conduct and language were reasonably calculated to provoke the difficulty, yet that his declaimer of intent to do so would preclude the right to submit this issue to the jury, but the evidence showed his intent from other circumstances and facts which the jury must consider, and which took place before the time of the homicide, there was no error in the court's action in submitting the law on provoking the difficulty. Following McGrew v. State, 49 S. W. Rep., 227, and other cases.

### 9.—Same—Charge of Court—Murder—Manslaughter.

Where, upon trial of murder, the evidence was such that the question as to defendant's mind, whether it was incapable of cool reflection, was for the jury, there was no error in also submitting a charge on murder.

### 10.—Same—Evidence—Leading Questions.

The question, "Was McDaniel looking in the direction of Moore?" does not suggest the answer desired and was not leading. Following Moore v. State, 49 Texas Crim. Rep., 502, and other cases.

### 11.—Same—Evidence—Rebuttal—Bill of Exceptions.

Where the receipt of testimony though out of its order was a matter within the discretion of the trial judge, there was no reversible error. Neither was the admission of evidence which is not set out in the bill of exceptions.

### 12.—Same—Manslaughter—Charge of Court—Self-Defense.

Where the reference to self-defense in the court's charge on manslaughter was not an attempt to define self-defense but simply directed the jury's attention to the fact that they would bear it in mind, the complaint that the charge on manslaughter was unduly restrictive of defendant's right of self-defense, is untenable.

Appeal from the District Court of Rockwall. Tried below before the Hon. Joel R. Bond.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Baskett & DeLee*, for appellant.—On question of provoking difficulty: Pollard v. State, 45 Texas Crim. Rep., 121; Crowson v. State, 51 id., 12.

*E. A. Berry*, Assistant Attorney General for the State.—On question of cross-examination: Crockett v. State, 40 Texas Crim. Rep., 173, and cases cited in the opinion.

On question of leading question: Powdrill v. State, 62 Texas Crim. Rep., 442, and cases cited in opinion.

MORROW, JUDGE.—Appellant was convicted of. murder and his punishment fixed at five years confinement in the penitentiary.

The environment of the juror mentioned in bill of exceptions No. 1 was such as to· have given him opportunity to have formed some opinion touching the merits of the case. Nothing, however, is disclosèd which would have made him subject to challenge for cause. He was excused on peremptory challenge. ·No objectionable juror was forced on appellant, and he failed to exhaust his peremptory challenges. There is no error shown. Hudson v. State, 28 Texas Crim. App., 338; McKinney v. State, 31 Texas Crim. Rep., 583.

The venireman referred to in bill No. 2 having been excused upon peremptory challenge, and the court having offered to restore the challenge to appellant, the bill discloses no error, even though the juror had been subject to challenge for cause. Such opinion as he had was formed from hearsay, and in testing his qualification the court followed the procedure designated in subdivision 13 of Art. 692, C. C. P., Cannon v. State, 59 Texas Crim. Rep., 405.

The appellant, on cross-examination, was asked if he shot in self-defense when he shot deceased while he was crawling on his hands and knees and begging the appellant not to continue to shoot him. The eyewitnesses for the State testified that the shooting took place under these circumstances, and appellant claimed that all the shots fired by him were in self-defense. We think the cross-examination was germane and not subject to objection. Wharton Crim. Ev., Sec. 429; Weaver v. State, 68 Texas Crim. Rep., 214, 150 S. W. Rep., 785; Crockett v. State, 40 Texas Crim. Rep., 178; Brown v. State, 38 Texas Crim. Rep., 597.

Bill No. 4 relates to the exclusion of testimony which was subsequently admitted, and discloses no error.

The inquiry as to the appearance of appellant, whether excited or irritated, was not objectionable as leading. Cannon v. State, 59 Texas Crim. Rep., 398; Rogers v. State, 65 Texas Crim. Rep., 105, 143 S. W. Rep., 631; Bennett v. State, 39 Texas Crim. Rep., 639; Meyers v. State, 37 Texas Crim. Rep., 208.

The special veniremen having been sworn individually as they were impanelled, the failure to swear them *in masse* was an irregularity not available when raised for the first time on motion for a new trial. Caldwell v. State, 12 Texas Crim. App., 316. See Jones v. State, 37 Texas Crim. Rep., 434.

In the recent case of Wilson v. State, 210 S. W. Rep., 802, the opinion is expressed that the words "before the trial begins" in the statute, touching suspended sentence, meant before both parties had announced ready for trial. If it were not so however, the appellant having been convicted of murder, and the suspended sentence law not

applying to that offense, the holding of the trial court, that his application for the submission of that issue came too late, could have resulted in no harm.

The appellant was a tenant upon the farm of J. S. McDaniel, whose son, Bud McDaniel, was killed. The age of the appellant was fifty-seven years, and his son, Goldie Moore, a youth about seventeen or eighteen years of age, had been severely whipped by the deceased a few days prior to the homicide. This son, according to the testimony, had been an invalid and his mind was feeble. The cause of the assault upon him appears to have been his alleged misconduct towards the sister of the deceased. This appellant claimed, prior to the homicide, was a false charge maliciously fabricated. The appellant was incensed at the deceased, and went to Dallas and procured a pistol, and some ten minutes before the homicide, which occurred in the town of Rockwall, he, according to testimony which he denied, referred to the deceased as a "God damned thieving son-of-a-bitch," and said, "I will see him; I will tell him so when I see him." Appellant claimed that he obtained the pistol to leave with his wife on his contemplated absence in eastern Texas, and that he brought it to Rockwall on the occasion of the homicide for the purpose of having a scabbard made for it. He said that he saw the deceased and a companion step off a platform or gallery, and that he was carrying the pistol in a pasteboard box; that immediately upon seeing them he took the pistol out of the box and loaded it with cartridges which he had in his possession. He claimed he was not expecting trouble with the deceased and did not arm himself for the purpose of trouble, but for the purpose of defending himself, and said after he saw deceased walking before him he did not know what he was going to run up against. He said he had not made up his mind to kill deceased, but had turned the matter of assault on his son over to the court; that he was angry about it, and said: "I saw him stop and I went right on, did not halt more than a minute when I slipped my shells in my gun; I hadn't made up my mind to kill him, I loaded the gun to defend myself after I asked him if he beat up my boy; I couldn't help asking him the first time I saw him. I was going to shoot him if he made any 'resent.' I wasn't aiming to shoot until he made a pass and said, 'I can get you too;' I wouldn't have shot him if he hadn't resented it. I didn't know whether I hit him at all. I didn't know what he was after on the ground. When I shot the first time he went down like he was after something. I was shooting him to protect myself." He described the homicide by saying: "I walked up and said to deceased, 'Bud, did you get satisfaction out of Goldie Moore?' to which deceased replied, 'I did,' and came up and says: 'I can get it out of you,' and made a lunge at me and I shot him; it looked like he had a knife or something coming toward me and I shot him and he went down on the ground and kept running toward me and I didn't know

but what he was fixing to come at me and I shot him again, twice more.'' Upon being asked if he would have fired except in defense of his life, he said: ''Why, of course, I was mad and that is the cause of my doing it, to protect myself, to save my own life.''

The State's testimony, as developed from several witnesses, is illustrated by the following quotation from one of them: ''Bud McDaniel, Mr. G. I. Trotter and I were standing together, kinder in a row; . . . Mr. Trotter was 'cutting up' and Bud was standing laughing at us. . . . When I first saw Mr. Moore he was coming off the walk. Not a word was said about the defendant. Bud McDaniel was not looking in the direction from whence the defendant came. The defendant walked up in about six or eight feet of us, I suppose, and said: 'Bud, I guess you got satisfaction out of the boy,' and when he said that he shot, and Bud threw up his arm like that, and fell and caught on his hands and knees and went running off, saying 'For God's sake, don't kill me; he was running on his hands and knees and the defendant was following him and when he shot him the second time Bud was saying 'For God's sake, don't do that.' When the appellant said 'I guess you got satisfaction out of the boy,' McDaniel made no reply.''

Appellant insists that if it be conceded that appellant's question and manner were reasonably calculated to provoke the difficulty that his disclaimer of intent to do so would preclude the right to submit the issue to the jury. It is true that to justify the submission of the issue the words and acts of the appellant must have been reasonably calculated to bring about a difficulty and the appellant must have had the intention to do so in order that he might have an excuse for killing or injuring the deceased. We do not think, however, that the appellant's statement of his conclusion that he had no intention to kill or to provoke the difficulty was conclusive. The jury was authorized in deciding what his intention was to take into consideration his conduct and his relation to the deceased. The expression of the court in McCraw's case, 49 S. W. Rep., 227, is pertinent. Judge Brooks writing the opinion, says: ''While the act of provocation must be confined to the time when the homicide was committed, yet we do not understand by this that we cannot look back to the facts transpiring before this—the course of conduct of the parties, and their former conversations, in order to shed light upon it and render significant some act or declaration done at the time of the homicide.'' The court, with the acquiesence of appellant, submitted the issue of self-defense. He relied on it in his testimony. His reliance upon it was based upon the fact that he testified that deceased responded to his inquiry about getting satisfaction out of the boy, by an assault or a threatened assault and that the appellant thought that he had a knife or some instrument to injure him with. The assault which he described, came, from his standpoint, in immediate response to the words he used to the deceased and the jury in

determining whether they were reasonably calculated to provoke the deceased, had before them the avowed intention of the appellant to kill the deceased if he resented or made any move in response to the language that he used to him. They had before them the fact that the appellant, as soon as he saw the deceased, loaded his pistol, approached deceased and accosted him in the manner which he described; that five or ten minutes previously he had used in the presence of a witness, words denouncing the deceased and threatening to denounce him to his face; the anger and resentment of the appellant developed not only from his own admissions, but from the testimony of other witnesses, his expressed belief that a wrong had been done him in the assault upon his son and that it was founded upon malicious and false accusations against his son. In the light of these and other facts, which were before the jury, we are not prepared to say that the trial court would have been justified in deciding as a matter of law that there was no intent upon the part of the appellant to provoke the deceased to assault him or that he did nothing reasonably calculated to do so. Neither are we prepared to say that the jury, in passing upon the subject, was without regal basis for the conclusion which they formed. There are many cases supporting the view expressed in the quotation from McCraw's case *supra*, among them Bateson v. State, 46 Texas Crim. Rep., 46; Barstado v. State, 48 Texas Crim. Rep., 255; Cornelius v. State, 54 Texas Crim. Rep., 186; Tardy v. State, 47 Texas Crim. Rep., 444; Taylor v. State, 47 Texas Crim. Rep., 122.

Under the evidence of bystanders who described the acts and conduct of the deceased and the circumstances attending the homicide, we think the question, whether appellant's mind was in a condition rendering him incabable of cool reflection, was for the jury, and that the court would not have been justified in eliminating the issue of murder.

The question, "Was McDaniel looking in the direction of Moore?" does not suggest the answer desired, and the bill complaining that it was leading discloses no error. Coates v. State, 2 Texas Crim. App., 19; Moore v. State, 49 Texas Crim. Rep., 502; Branch's Ann. P. C.. Sec. 157.

The bill complaining of the admission of the evidence of the witness Underwood, failing to set out the evidence, we are unable to pass upon its materiality. See Vernon's Texas Crim. Stats., Vol. 2, p. 537, subdivision 21, and cases listed. The receipt of it in rebuttal, though out of its order, was a matter within the discretion of the trial judge. Graham v. State, 57 Texas Crim. Rep., 109.

Complaint is made of the charge on manslaughter in that it was unduly restrictive of appellant's right of self-defense. The reference in the charge on manslaughter of self-defense was not an attempt upon the court to define the law of self-defense, but to direct the jury's attention to the fact that they should keep the law of self-

defense and the facts touching it in mind for appellant's benefit. The law of self-defense both on real and apparent danger, was fully given to the jury in other and distinct paragraphs of the charge, and the complaint made that the charge on manslaughter resulted in undue restriction of appellant's right of self-defense is not sustained, we think, by the record; but assuming that the issue of self-defense was raised by the facts, we think it is sufficiently submitted, taking into consideration the charge as a whole.

All the bills of exception have been examined and considered, though some of them are not discussed. They relate to the application of questions of practice, and we deem a detail review of them unnecessary.

Perceiving no error committed by the trial court which would authorize a reversal of the judgment, it is affirmed.

*Affirmed.*